

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 1022 | DATE | 3/17/2004 |
| CASE TITLE | TIG Insurance Company, Inc. vs. Carey's Car Credit Inc., et. al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss [Doc. No. 5]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons set forth in the attached memorandum opinion and order, Defendants' Motion to Dismiss [Doc. No. 5] is granted in its entirety. This case is closed.

(11) ■    [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 1 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | docketing deputy initials | 25 |
| X | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| slf (lc) | courtroom deputy's initials | 2004 MAR 18 PM 1:33 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIG INSURANCE COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 1022 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| CAREY'S CAR & CREDIT, INC., d/b/a ) | |
| CAREY'S CAR & CREDIT CENTER, ) | |
| SMITH'S SOUTHWICK, INC., d/b/a ) | |
| SOUTHWICK FARMS, and SMITH ) | |
| STABLES, INC., d/b/a SOUTHWICK ) | |
| FARMS, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
MAR 1 8 2004

## MEMORANDUM OPINION AND ORDER

Before this Court is Carey's Car & Credit, Inc., individually and d/b/a Carey's Car & Credit Center ("Carey's"), Smith's Southwick, Inc., individually and d/b/a Southwick Farms ("Southwick"), and Smith Stables, Inc., individually and d/b/a Southwick Farms ("Stables") (collectively, "Defendants") motion to dismiss TIG Insurance's Company's ("TIG") Complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, Defendants' motion to dismiss is granted in its entirety.

I. FACTUAL BACKGROUND

TIG seeks declaratory judgment relief arising from a controversy concerning the Parties' rights, statuses and liabilities under an insurance policy issued by TIG to Carey's (the "Policy"). The Policy issued to Carey's by TIG, effective from February 1, 2002 to February 1, 2003, limits

-1-

25

liability to $1,000,0000 for each claim and in the aggregate, excess a $1,000 deductible per accident. ( See Def. Ex. 1). The policy contains a "Garage Operations" provision which provides:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance, or use of covered "autos." (See Def. Ex. 2).

The declaratory judgement action arises out of a wrongful death suit filed in the Circuit Court of Cook County, Illinois, Case No. 02 L 013065 (the "Medina suit"). (Pl. Comp. ¶ 14). Some time prior to August 8, 2002, Carey's, a used car dealership, loaned a tractor/trailer to Southwick and/or Stables. (Pl. Comp. ¶ 18). Carey's loaned the tractor/trailer to Southwick and/or Stables on the condition that the vehicle was to be used strictly for farm operations on farm premises. (Pl. Comp. ¶ 19). Pahnke operated this vehicle in the course of his employment with Southwick and/or Stables. (Pl. Comp. ¶ 20). On August 8, 2002, while driving the vehicle, Pahnke collided with Mariela Medina's vehicle, killing Mariela Medina and injuring three other passengers. (Pl. Comp. ¶ 21). TIG is currently defending Carey's, Southwick, Stables, and Jason Pahnke ("Pahnke") under a reservation of rights in the Medina suit.[1] (Pl. Comp. ¶ 15). TIG contends that the various terms and conditions of the Policy operate to preclude coverage for the Defendants. (Pl. Comp. ¶ 26). In Count I of its Complaint, TIG argues that Southwick and Stables' use of the covered auto was not in furtherance of garage business. Additionally, in

---

[1] On January 30, 2004, default judgment was entered in favor of TIG against Pahnke in this Court, for failure to answer the Complaint pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Therefore, Pahnke is no longer a defendant in this declaratory judgment action.

Count II of its Complaint, TIG argues that even if the use of the vehicle was in furtherance of garage business, Southwick, Stables, and Pahnke exceeded the scope of permission granted to them by Carey's. Therefore, TIG seeks a declaration from this Court that, according to the policy terms, there is no duty to defend or indemnify Carey's, Southwick, or Stables.

## II. DISCUSSION

### *A. Legal Standard for a Motion to Dismiss*

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all well pleaded allegations as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." Gomez v. Illinois State Board of Education, 811 F.2d 1030, 1039 (7th Cir. 1987). A party's claim should only be dismissed if it is clear that no set of facts in support of the claim would entitle the party to relief. Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)). Additionally, where, as here, Plaintiff attaches the insurance policy to its pleading, that instrument becomes a part of the complaint for all purposes, and is properly considered as part of the complaint. See Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002).

### *B. Analysis*

#### *1. Must the Use of the Auto be "In Furtherance of Garage Business?"*

As stated, TIG contends that it is under no obligation to provide coverage for the Defendants, because the use of the covered vehicle involved in the Medina suit was not used in furtherance of garage business. Defendants, however, contend that whether the vehicle was used in furtherance of garage business is irrelevant, as the policy clearly provides coverage for the

ownership, maintenance, or use of any covered auto, regardless if the use is in furtherance of garage business.

Section VI(H) of the Garage Coverage Form defines "Garage Operations" as follows:

"Garage operations" means the ownership, maintenance, or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance, or use of the "autos" indicated in Section I of this Coverage form as covered "autos." "Garage operations" also include all operations necessary or incidental to a garage business.

(See Def. Ex. 2). The Plaintiffs do not dispute that the vehicle in question was a "covered auto" as defined by the Policy. (See Def. Ex. 1). However, the Plaintiff contends that the insurance policy must be read as a whole, and that the sentence that defines "garage operations" as the ownership, maintenance, or use of covered "autos" must be read in the context of the other sentences in the paragraph defining "garage operations." Therefore, TIG contends, there must be a determination as to whether Southwick and/or Stables were granted use of the vehicle in furtherance of "garage business."

In Illinois, "in construing an insurance policy, a court must ascertain the intent of the parties to the contract." Indiana Ins. Co. v. PANA Community Unit School Dist. No. 8, 314 F.3d 895, 900. (7th Cir. 2002). Further, in order to determine the meaning of the policy's words and the intent of the parties, the court construes the policy, "as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract." Id. Additionally, in contemplating what the provisions in an insurance agreement may mean, the Court considers them in the factual context of the case. Id. at 901 (citing Putzbach v. Allstate Ins. Co., 494 N.E.2d 192, 195 (Ill. 1986)). The entire insurance policy, rather than an isolated part, should be read to determine whether an ambiguity exists. See Cobbins v. Gen. Accident

Fire & Life Assurance Corp., 290 N.E.2d 873, 876 (Ill. 1972). However, the structure of Plaintiff's own policy language in Section VI(H), even when read in context of the entire policy, leads to the conclusion that the policy includes coverage for all maintenance, ownership and use of covered autos, even if not in furtherance of garage business. Plaintiffs included the phrase "for garage business" when describing the coverage for the location used for garage business. Additionally, TIG was clear to use the qualifying phrase "incidental to garage business" when stating the coverage provided for garage operations. By failing to use qualifying language, it is clear that the ownership, maintenance or use of covered autos need not be in furtherance of or incidental to garage business.

Assuming, *arguendo*, that Plaintiff's interpretation that the use of covered autos must be incidental to garage business is reasonable, this means that there are two reasonable interpretations of the coverage of autos under the policy. If the words in an insurance policy are susceptible to more than one reasonable interpretation, they are ambiguous. Indiana Insurance, 314 F.3d 895, 902 (7th Cir. 2002) (citing United States Fid. & Guar. Co. v. Wilkin Insulation Co., 578 N.E.2d 926, 930 (Ill. 1991)). Any ambiguity will be construed against the insurer who drafted the policy. Indiana Insurance, 314 F.3d at 902 (citing Outboard Marine Corp. v. Liberty Mut. Ins. Co., 607 N.E.2d 1204, 1212 (Ill. 1992)). See also Employers Ins. of Wausau v. Ehlco Liquidating Trust, 708 N.E.2d 1122, 1130 (Ill. 1999) ("[T]he court must construe the policy in favor of the insured and against the insurer that drafted the policy."). Consequently, even if the policy's definition of "covered autos" is ambiguous, it must be construed against TIG and in favor of Defendants. Therefore, TIG cannot claim any set of facts that would allow it to

successfully contend that the ownership, maintenance or use of covered autos must be in furtherance of garage business.

### 2. Did Southwick, Stables, and Pahnke Exceed the Scope of Permission Given by Carey's?

In Count II of the Complaint, TIG asserts that the permission that Carey's granted to Smith and Southwick for the use of the covered vehicle was strictly for farm operations on farm premises. TIG claims that Smith and Pahnke did not conform their use of the vehicle to the purpose for which Carey's loaned the vehicle, thereby exceeding the scope of permission given by Carey's. Therefore, Plaintiff contends, even if the first permitted use of the vehicle need not be in furtherance of garage business, Southwick, Stables, and Pahnke exceeded the scope of permitted use granted by Carey's, thereby foreclosing coverage for Defendants under the Policy.

The Policy includes the following section defining insureds:

a. The following are "insureds" for covered "autos":
(1) You for any covered "auto."
(2) Your customers, if your business is shown in the declaration as an "auto" dealership.
(3) Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:
> (a) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
> (b) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
> (c) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is your "garage operations."
> (d) A partner (if you are a partnership) or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

(4) Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(See Def. Ex. 3). Section 3 of the provisions defining "insureds" is an "omnibus clause." The "initial permission rule" defines the scope of an omnibus provision under Illinois law. The initial permission rule provides that if the named insured has initially given permission to use the insured vehicle, departure from the authorized use does not terminate the initial permission. Country Mut. Ins. Co. v. Federated Mutual Ins. Co., 735 N.E.2d 1045, 1049 (Ill. App. Ct. 2000) (citing Maryland Casualty Co. v. Iowa National Mutual Ins. Co., 297 N.E.2d 163, 167-68 (1973)). Any person subsequently given permission to drive the car by that first permittee is covered under the policy. American Country Insurance Company v. Wilcoxon, 537 N.E.2d 284, 287 (Ill. 1989). The rule applies even if the first permitee deviates from the authority given to him by the insured, and "even where it cannot be established that the initial permitee granted permission to the third person driving the vehicle." St. Paul Fire and Marine Insurance Company v. Gurthie, 773 N.E.2d 763, 765 (Ill. 2002) (quoting Kuhn v. State Farm Mutual Automobile Insurance Co., 45 N.E.2d 45, 49 (Ill. App. 1990)). See also United States Fidelity & Guaranty Co. v. McManus, 356 N.E.2d 78 (1976) ("a further grant of permission from the initial permitee need not be shown in order to invoke the coverage."). Under Illinois law, it is clearly irrelevant whether Southwick, Stables, and Pahnke deviated from the permitted use of the vehicle; coverage is still provided under Illinois law. Therefore, TIG cannot plead any set of facts that would preclude coverage under the policy.[2]

---

[2] Plaintiff contends that the omnibus coverage and the "initial permission rule" are inapplicable to garage liability policies. However, Defendants are correct when they assert that the Illinois Supreme Court has held that garage liability insurance "must contain an omnibus clause insuring those driving a vehicle with the owner's permission." See State Farm Mutual Ins. Co. v. Universal Underwriters, 695 N.E.2d 848, 850-51. Additionally, Plaintiff's arguments that this case should be distinguished on the grounds that Pahnke was not a test-driver or using the car as a loaner vehicle lacks merit. Illinois case law make no distinctions

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is granted in its entirety. This case is closed.

Enter:

*David H. Coar*
David H. Coar
United States District Judge

Dated: **March 17, 2004**

---

on these grounds, and policies cover "any person using the vehicle with the named insured's permission." Id. at 850. Finally, Plaintiff's contention that the initial permission rule only applies in cases where permission is extended in social situations (i.e, parent to son, from friend to friend), was rejected in Farmers Auto. Ins. Ass'n v. Iowa Mut. Ins. Co., 221 N.E.2d 795, 797 (Ill. App. Ct. 1996). ("The defendant argues that the 'initial permission rule' should be applied only to cases where the relationship between the vehicle owner and the user is that of employer-employee or a social relationship...We can conceive of no justification for such a distinction.") Additionally, the court in Farmer's Auto stated, "The rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured and that it would be undesirable to permit litigation as to the details of the permission and use. Id.